## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

**KEVIN BROWN,**
individually and on behalf of all others
similarly situated,

Civ. Case No.  16-cv-436

Plaintiff,

CLASS ACTION COMPLAINT

v.

**IKO Manufacturing Inc., IKO Industries**             JURY TRIAL DEMANDED
**Inc., IKO Industries Ltd., IKO Midwest**
**Inc.,** and **IKO Production Inc.,**

Defendants.

---

Through the undersigned counsel, plaintiff Kevin Brown, individually and on behalf of

all others similarly situated, files this complaint against defendants IKO Manufacturing Inc., IKO

Industries Inc., IKO Industries Ltd., IKO Midwest Inc., and IKO Production Inc.   On his

personal knowledge, and on investigation and the information and belief of his counsel, Plaintiff

avers the following:

## BACKGROUND

A.      **IKO Shingles**

1.      This is a class action on behalf of all persons and entities who purchased organic-

based or matted shingles manufactured and/or distributed under various trade names by IKO

Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO

Production, Inc. (collectively IKO).

1

2.      Between approximately 1979 and 2007, IKO sold or distributed organic shingles (the Shingles) throughout the United States, but primarily in the northern tier states and portions of the south-eastern United States.

3.      All Shingles are manufactured using the same basic formula:  a base layer of organic felt saturated with asphalt, a middle layer of an oxidized asphalt coating, and a top layer of mineral granules with a strip of asphalt sealant.

4.      IKO manufactured and marketed its Shingles under various brands and product names, including but not limited to Chateau, Renaissance XL, Aristocrat, Total, Armour Seal, Superplus, Armour Lock, Royal Victorian, New Englander, Imperial Seal, Cathedral XL, Ultralock 25, Armour Plus 20, Armour Tite, Ultra Shadow, Cathedral XL, Crowne 30, Vista, Supreme, and Skyline, for sale nationwide.  Defendants marketed and sold the organic Shingles to tens of thousands of consumers throughout the United States.

5.      IKO markets and warrants all the Shingles as durable and as offering long-lasting protection for a specified life ranging from 20 to 50 years.  The building trades and consumers recognize warranty durations as a measure of shingles' usable life, referring to a shingle with a 25-year warranty as a "25-year shingle."   Additionally, shingles with a 25-year warranty are generally priced at a lesser amount than shingles with a 50-year warranty.

6.      IKO's sales brochures and marketing literature, which were widely distributed to building and roofing professionals who installed shingles and generally available to Plaintiff and similarly situated consumers at the time of sale, state the Shingles are "[t]imetested and true" and "an excellent choice for exceptional roofing value," among other representations.  The Shingles have not stood the test of time and, due to early and severe deterioration requiring premature tear-off and replacement, have not delivered the promised usable life.

7.     Under quality certification standards promulgated by ASTM International, IKO certified that the Shingles met the ASTM D225 standard.  This certification indicated that the Shingles met building codes and were suitable for use in the building trades.  To determine whether the Shingles met D225, IKO was required to test the shingles in accordance with D228, another ASTM standard.  In the manufacturing processes for the Shingles, IKO did not conduct D228 testing, nor did it determine whether newly manufactured shingles met the D225 standard.

8.     IKO set forth warranties for the Shingles in widely distributed documents to members of the building trades and the public.  Among other claims, IKO asserted that it was "Setting the Standard" for "quality, durability, and innovation."  IKO's Shingles have not lived up to these promises.

9.     IKO represented in documents generally available to the public that its Shingles would last for a specified period of time without problems, or the company would remedy the situation.  IKO made this representation before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to store displays, sales seminars, and training materials), and on the Shingles' packaging.

10.     The Shingles manufactured and sold by IKO are defectively manufactured such that they fail prematurely causing damage to the underlying structures (including roof, structural elements, interior walls and ceilings) and other property of Plaintiffs and members of the Class. The Shingles are non-conforming.

11.     The defects present in IKO Shingles are so severe that, in buildings on which the Shingles are installed, the shingles must be repaired or replaced sooner than reasonably expected.

12.     All Shingles are uniformly defective such that Shingles are failing before the time periods advertised, marketed, and guaranteed by IKO or otherwise expected by ordinary consumers purchasing the Shingles.

13.     IKO knew or reasonably should have known the Shingles are defective and will fail prematurely due to moisture invasion.  In particular, because IKO did not test to determine whether the Shingles actually satisfied the D225 standard, it had reason to know the Shingles did not meet baseline requirements for use as residential shingles and would fail prematurely.

14.     The organic materials contained in the Shingles are susceptible to becoming wet, moist, saturated, or otherwise invaded by water.  Further degradation is caused when the wet, moist, or saturated organic material goes through repeated freeze-thaw cycles.  The degradation continues as the Shingles lose the ability to hold granules further subjecting the organic content of the Shingles to moisture.  Shingles are then further degraded when subjected to the sun as the drying of the content eventually causes the Shingles to lose shape and deform.  This deterioration and deformation takes forms like cracking, curling, blistering, fishmouthing, clawing, and discoloration.  At the extreme, the Shingles break or blow off roofs.  As a result, the Shingles do not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as a roofing product.

15.     The following photos, excerpted here in thumbnail form, illustrate some of the problems consumers have experienced with their IKO Shingles:



 

## B.    IKO Warranties

16.    The Shingles are subject to IKO's express warranties.  These warranties create an expectation within the building trades and by ordinary consumer purchasers that the Shingles will last as long as the warranty period.  Consumers were generally charged more to purchase Shingles with longer warranties, thereby creating the expectation that a longer warranty period guaranteed greater quality and durability.

17.    IKO advertised and guaranteed warranty periods for the Shingles without testing to determine whether the Shingles would last as long as warranted.  As to certain Shingles, it appears the warranty period increased in duration without IKO making substantial changes to the Shingles' design or manufacturing process.

18.    IKO did not use a process or formula for determining the length of its warranties, but rather extended the length of warranties as the business environment changed so that IKO would not suffer a marketing disadvantage against its competitors.

19.    As IKO's competitors offered longer warranty periods for similar shingles, IKO generally lengthened the warranty period of the Shingles without adequate or appropriate testing to determine if the increase of warranty was justified, supportable, or otherwise true.

**C.  IKO Warranty Claim Practices**

20.    IKO uses an overly burdensome warranty claims procedure that is designed to deter warranty claimants from filing and reject otherwise valid claims.  Much of the information IKO requires is not available to homeowners, especially those who purchased a new home from a builder or who were not the original owners of the roof.

21.    IKO will not consider a warranty claim until the claimant submits *all* of the following information to the company:  (a) proof of purchase of an IKO product indicating the type of shingle and quantity; (b) proof that the claimant is the owner of the home; (c) the date the shingles were applied; (d) the number of shingles applied; (f) the number of shingles involved in the claim; (g) the type of roof deck; (h) the number of layers of shingles on the roof deck; (i) the slope of the roof deck; (j) the number of vents on the roof; (k) photographs of the roof not taken with a digital camera; and (l) two full shingle samples (which require a roofing professional to carefully remove in-service shingles from the claimant's roof).

22.    Instead of providing compensation based upon the terms of the warranty, IKO intentionally misleads warranty claimants, including Plaintiffs and the Class, by requiring them to sign a "Goodwill Release" in exchange for cash compensation.

23.    The consideration offered by IKO in exchange for a signed Goodwill Release is woefully inadequate to compensate claimants for defective Shingles because it does not cover the full cost of replacement shingles, labor, disposal, or other related costs incurred by Plaintiffs and the Class.

24.    The Goodwill Release is not compensation under the terms of the warranty, but rather "represents the compromise of a disputed claim."  In essence, it is IKO's routine business

practice to dispute every warranty claim submitted to the company, even though it had actual or constructive notice that its Shingles are defective.

25.     The Goodwill Release operates as a waiver of the warranty, and releases IKO from "any and all claims, causes of action, agreements, promises, damages and demands . . . of any kind or nature whatsoever . . . which the [warranty claimant] ever had or now has against IKO[.]"

26.     The Goodwill Release is IKO's attempt to "buy off" any future claims relating to its Shingles and relieve itself of the burden and responsibility of future warranty claims concerning any possible remaining Shingles on a warranty claimant's roof.

27.     The consideration offered for an executed Goodwill Release is based upon a fraction of the cost of replacing those Shingles with manifested defects, but the Goodwill Release waives any warranty claims for the rest of the Shingles on the roof.

**D.     Failure to Disclose Defects**

28.     Since 1984, IKO has received thousands of warranty claims alleging defects in the Shingles.

29.     A substantial percentage of all warranty claims received by IKO relate to its Shingles.

30.     An overwhelming percentage of all warranty claims denied by IKO relate to claims about the Shingles.

31.     Despite receiving a litany of complaints from consumers, such as Mr. Brown and other Class members, IKO has refused to convey effective notice to consumers about the defects, and refused to repair defective roofs fully or repair the property damaged by the premature failure of the Shingles.

8

32.     IKO's response to customers' Shingle warranty claims is woefully inadequate in that it limits Plaintiffs' and Class members' recovery to piece-by-piece material costs while excluding labor costs.

**E.     Damage to Plaintiffs and the Class**

33.     As a result of the defects and failures alleged herein, Mr. Brown and the Class have suffered actual damages.  The Shingles on their homes or structures have and will continue to fail prematurely compared to the time expected by ordinary consumers and the time warranted by IKO, requiring them to expend thousands of dollars to repair or replace the Shingles and repair or prevent damage to the rest of the structure.  Damage caused by the defective Shingles includes, but is not limited to damage to underlying felt; damage to structural roof components (including the rotting and degradation of plywood sheathing, trusses, and rafters); damage to plaster and sheetrock; and damage to walls, ceiling, and other components.

34.     Because defects in the Shingles are latent and not detectable until manifestation, Plaintiff and Class members were not reasonably able to discover the Shingles were defective until after installation, despite the exercise of due diligence.  Similarly, members of the building trades would not be able to detect the latent defects without independent testing, modeling, or analysis.

35.     Because individual Class members have relatively small claims against IKO and because they have modest resources for prosecuting such claims, it is unlikely that individual Class members can afford to independently pursue litigation against IKO.  This is especially true in light of the size and resources of IKO.

36.     The Shingles manufactured and sold by IKO are defective in that they fail prematurely, causing damage to the properties of Plaintiffs and Class members forcing them to repair or replace their roofs sooner than reasonably expected, marketed, or warranted.

37.     Plaintiffs seek to recover, for themselves and the Class, the costs of repairing the damage to their property and replacing their roofs, or injunctive relief forcing IKO to replace their defective roofs.

## PARTIES

**A.     Plaintiff Kevin Brown**

38.     At all relevant times, Plaintiff Kevin Brown was a citizen of New York (Erie County).

39.     Plaintiff had "Aristocrat 25"-branded Shingles installed on his home in 1999. Plaintiff received a 25-year warranty with the Shingles.

40.     At the time of purchase, IKO represented, marketed, and created the expectation that the Shingles had a usable life of 25 years.

41.     IKO did not provide Plaintiff with a formal warranty, or any specific limitations on the terms of its warranties, prior to the sale or installation of the Shingles on Plaintiff's home.

42.     Plaintiff first became aware of problems with the Shingles in August 2015.  When returning to his home, he noticed that some Shingles around a skylight were loose.  At or around the same time, Plaintiff also found shingle fragments in his yard.

43.     Plaintiff then consulted roofing contractors regarding the Shingles.  Both found extensive deterioration of the Shingles and that all roofing shingles needed to be replaced.

44.     No later than March 2016, Plaintiff notified IKO that the Shingles were failing, undertaking his best efforts to inform IKO about this problem.  Plaintiff supplied details about

his purchase of the Shingles, including the identity of the roofing contractor, a photograph of reserve stocks of the Shingles in their original wrapper, and the code number for the Shingles on that wrapper.  Plaintiff also submitted several shingle fragments to IKO, advising it would not be practicable for him to remove full shingles from his roof.

45.     In a letter on March 29, 2016, IKO refused to grant Plaintiff any relief, asserting that Plaintiff had not supplied adequate proof of purchase and that Plaintiff needed to provide "2 full shingles" from his roof.

46.     On consultation with a roofing contractor, Plaintiff received an estimate showing it would cost at least $7,950 to replace the Shingles.  Had the shingles lasted the duration of the 25-year warranty, this cost would have been deferred for about a decade.

**B.     Defendants**

47.     Defendant IKO Manufacturing Inc. is a Delaware corporation with its primary place of business in Kankakee, Illinois, where it manufactures, sells, markets, and services IKO Shingles.

48.     Defendant IKO Industries Ltd. is an Alberta corporation and a leading North American manufacturer and distributor of roofing materials.  IKO Industries Ltd. is the parent company of Defendant IKO Manufacturing, and it is the owner of several patents that may apply to the Shingles made by IKO Manufacturing.  IKO Industries Ltd. operates manufacturing plants in Canada and distributes Shingles in the United States.

49.     Defendant IKO Midwest, Inc. is a Delaware corporation with its primary place of business in Kankakee, Illinois.  IKO Midwest, Inc. manufactures, distributes, and sells IKO Shingles throughout the United States.

50.     Defendant IKO Industries, Inc. is a Delaware corporation that imports Canadian-made Shingles into the United States.

51.     Defendant IKO Production, Inc. is a Delaware corporation with significant business operations in Wilmington, Delaware, where it manufactures, distributes, and/or sells the Shingles.

52.     Since 1989, all warranty claims relating to Shingles sold in the United States have been processed in IKO offices in Illinois.

53.     All marketing of Shingles in the United States, including advertising, marketing, and promotional materials, has been managed from IKO offices in Illinois.

## JURISDICTION AND VENUE

54.     IKO, through its subsidiaries and affiliates, operates manufacturing plants in the United States and has significant business operations in New York.  IKO sells and markets the Shingles in New York and has sufficient contacts with that state to intentionally avail itself of the laws and markets of New York.

55.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy is more than $5 million and the parties are diverse:  Plaintiff and the Class members are citizens of New York, whereas the IKO entities are citizens of Delaware, Illinois, and/or Canada.

56.     A failure of the Shingles occurred on Plaintiff's home, which is located in this District.  This Court properly exercises venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, or in the alternative, because a substantial part of the property at issue in this action is situated in this District.

## CLASS ACTION ALLEGATIONS

57.     This action is brought and may be maintained as a class action under Federal Rule of Civil Procedure 23 on behalf of Plaintiff and all others similarly situated for the following Class:

> All persons who own structures located in New York on which IKO organic-mat shingles were installed from 1979 to the present.

This Class shall exclude IKO; any business entity in which IKO has a controlling interest; any business entity that has a controlling interest in IKO; and IKO's legal representatives, assigns, or successors.  This Class shall also exclude the judge to which this action is assigned and any member of the judge's immediate family.  Plaintiffs reserve the right to redefine the Class prior to class certification.

58.     The Class includes at least 1,000 members and is likely to have many thousands of members.  For this reason, joinder of all Class members is impracticable.  If Class members' claims are decided in a single proceeding, this will result in substantial efficiencies for the parties and this Court.

59.     Plaintiff's claims are typical of those of Class members in that Plaintiff and the Class members own structures on which the Shingles were installed.  IKO engaged in a common course of wrongdoing, through its fraudulent or negligent manufacture of the Shingles, which affects Plaintiff and all Class members.  The Shingles fail and will continue to fail prematurely. Plaintiff and the Class members have been damaged in the same way in that they all incur similar costs repairing or replacing faulty Shingles and making other repairs related to the Shingles' premature failure.

14

60.     Numerous questions of law and fact are common to Plaintiff and the Class, and these common questions predominate over questions specifically relating to individual Class members.  The common questions include the following:

      a.    Whether the Shingles fail prematurely and are not suitable for use as an exterior roofing product for the length of time advertised, marketed, or warranted.

      b.    Whether the Shingles conform to ASTM D225 certification or whether IKO failed to implement D228 testing for the purpose of determining compliance with D225.

      c.    Whether the Shingles are defectively designed or manufactured.

      d.    Whether IKO knew or should have known the Shingles were defective.

      e.    Whether the Shingles failed to perform in accordance with reasonable expectations of ordinary consumers.

      f.    Whether IKO failed to disclose the likelihood that the Shingles would fail prematurely.

      g.    Whether IKO engaged in deceptive conduct through misrepresentations, omissions, or other misleading conduct in marketing or advertising for the Shingles.

      h.    Whether Plaintiff and Class members are entitled to compensatory or special damages, and if so, the amount of damages.

      i.    Whether IKO is financially responsible for notifying Class members about the Shingles and for damages associated with the use of the Shingles on Class members' structures.

j.      Whether IKO engaged in unfair or deceptive conduct through its warranty claim practices.

61.    Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel with substantial experience prosecuting statewide, multistate, and national consumer class actions, including class actions that involve defective products and defective construction materials.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of the Class.

62.    Plaintiff and Class members have suffered and will continue to suffer harm and damages because of IKO's conduct.  A class action is superior to other methods for the fair and efficient adjudication of the controversy.  If Class members litigated their claims individually, the litigation costs will substantially exceed each Class member's recovery, making individual claims cost-prohibitive.  For this reason, in the absence of class action, Class members have no effective remedy at law.  Class action is also superior to other methods of adjudication in that it prevents piecemeal litigation, conserves the resources of the parties and the courts, and promotes consistent and efficient adjudications.

**ESTOPPEL FROM STATUTE OF LIMITATIONS**

63.    IKO knew the Shingles were faulty and fraudulently and intentionally concealed material information from Mr. Brown and Class members.  IKO continued to assert the Shingles were durable roofing products when it knew they were not.   In particular, IKO failed to disclose the Shingles were defective and would deteriorate in less than their expected lifetime.

64.     Because defects in the Shingles are latent and not detectable until they manifest, Plaintiff and Class members were not reasonably able to discover problems with the shingles until after installation, notwithstanding their due diligence.

65.     Plaintiff had no way to discover that the Shingles were defective or that he had claims against IKO until shortly before he filed this action.  IKO fraudulently concealed and omitted material information regarding flaws in the Shingles' design and manufacture, and in doing so, must be equitably estopped from asserting limitations defenses.

### COUNT I:  BREACH OF EXPRESS WARRANTY
### against all Defendants

66.     Plaintiff incorporates by reference each allegation contained in the preceding paragraphs of this Complaint.

67.     IKO marketed and sold the Shingles into the stream of commerce with the intent that the Shingles would be purchased by consumers like Plaintiff and Class members.

68.     IKO expressly warranted that the Shingles were durable and would maintain their structural integrity.  Through statements in its marketing and advertising, IKO created express warranties that became part of the basis of the bargain when Plaintiff and Class members purchased the Shingles.

69.     IKO also created express warranties through statements and representations on the Shingles' packaging, including its claim that the Shingles meet standards for ASTM D225 certification.

70.     Through its statements regarding the duration of its warranties, IKO expressly warranted that the Shingles would last as long as the duration of the warranty, for periods of at least 20 years up to a lifetime.

71.     IKO breached its express warranties in that the Shingles are not durable and do not maintain their integrity or useful life for the promised period.  Because the Shingles do not comply with D225, they lack sufficient dimensional integrity to last the warranted period.  As a result of these failures, the Shingles crack, split, discolor, delaminate, and otherwise deteriorate prematurely, thereby damaging the roof and related elements of structures owned by Plaintiff and Class members.

72.     Assuming Plaintiff or Class members are bound by limitations in any of IKO's formal express warranties, those express warranties fail of their essential purpose because under their terms, the recovery is inadequate to repair or replace failed Shingles or redress damage to the underlying structure.  Assuming Plaintiff or Class members are bound by any of IKO's formal express warranties, they do not provide Mr. Brown or Class members with a minimum adequate remedy.

73.     The limitations in IKO's warranties are unenforceable.

74.     IKO further breached its express warranties by refusing to pay warranty claims or by paying less than the full amount to which claimants are entitled.

75.     As a result of IKO's breaches, Plaintiff and Class members suffered actual damages from their purchase and installation of an inferior product that has failed or is failing due to intrinsic defects.  This failure requires Plaintiff and Class members to incur significant expense to repair and replace elements of their structures.

76.     IKO had due notice of its breaches through communications from Plaintiff; through communications from other Class members who reported failures of the Shingles; and through internal communications alerting IKO to intrinsic defects in the Shingles.  IKO further received notice through litigation relating to the Shingles.

18

77.     Plaintiff, individually and on behalf of all others similarly situated, demands judgment against IKO for compensatory damages for himself and all Class members, for the establishment of a common fund, plus applicable attorney fees, interest, and costs.

### COUNT II:  BREACH OF IMPLIED WARRANTY
### against all Defendants

78.     Plaintiff incorporates by reference each allegation contained in the preceding paragraphs of this Complaint.

79.     IKO impliedly warranted to Plaintiff and Class members that the Shingles was of quality and reasonably fit for the use for which it was intended.

80.     The Shingles were not of merchantable quality, and thus breached the implied warranty of merchantability, in that they prematurely deteriorated when put to their intended use. Because the Shingles do not comply with D225, they lack sufficient dimensional integrity to last the warranted period.  As a result of the Shingles' premature failures, Plaintiff and Class members suffered damages.

81.     IKO had due notice of its breaches through communications from Plaintiff; through communications from other Class members who reported failures of the Shingles; and through internal communications alerting IKO to intrinsic defects in the Shingles.  IKO further received notice through litigation relating to the Shingles.

82.     Plaintiff and Class members are not bound by any limitations in IKO's formal express warranties.  Assuming Plaintiff or Class members are bound by limitations in any of IKO's formal express warranties, those express warranties fail of their essential purpose because under their terms, the recovery is inadequate to repair or replace failed Shingles or to redress damage to the underlying structure.  In the absence of enforceable warranty limitations, Plaintiff and Class members can pursue relief under implied warranties.

19

83.     As a result of IKO's breaches, Plaintiff and Class members suffered actual damages from their purchase and installation of an inferior product that has failed or is failing due to intrinsic defects.  This failure requires Plaintiff and Class members to incur significant expense to repair and replace elements of their structures.

84.     Mr. Brown, individually and on behalf of all others similarly situated, demands judgment against IKO for compensatory damages for himself and all Class members, for the establishment of a common fund, plus applicable attorney fees, interest, and costs.

## COUNT III:  VIOLATION OF NEW YORK CONSUMER PROTECTION LAW
### against all Defendants

85.      Plaintiff incorporates by reference each allegation contained in the preceding paragraphs of this Complaint.

86.     Through deceptive and misleading representations regarding the Shingles, IKO violated the New York consumer protection law, N.Y. Gen. Bus. Law § 349.

87.     IKO committed such violations through conduct including, but not limited to, (1) representations that the Shingles were durable and would last the duration of the warranty when IKO either lacked evidence to support these claims or knew that the Shingles would not perform as represented; (2) failure to disclose material facts relating to the failure of the Shingles; (3) certifying that the Shingles met D225 certification when they were not tested for compliance with that standard and fell short of accepted industry standards for residential shingles; and (4) construing warranties and warranty claims in a manner that unfairly or deceptively distorted its obligations under warranties relating to the Shingles.

88.     IKO knew or had reason to know that the Shingles were defective, would fail prematurely, and would not perform as represented or warranted.

89.     IKO's deceptions or omissions occurred in the course of trade or business and were capable of deceiving reasonable members of the public.

90.     IKO's deceptions or omissions related to material facts that Plaintiff and any reasonable consumer would have considered when deciding whether to purchase the Shingles. Had Plaintiff and the Class known about intrinsic defects in the Shingles, they would have wanted better warranty coverage or a lower price, or they would have avoided the Shingles altogether and purchased another manufacturer's shingle.

91.     IKO intended that Plaintiff and Class members rely on its deceptions or omissions and thereby purchase its shingles.

92.     As a result of IKO's violations of the consumer protection law, Plaintiff and Class members suffered actual damages from their purchase and installation of an inferior product that has failed or is failing due to intrinsic defects, as well as further damages relating to IKO's warranty claim practices.  These failures require Plaintiff and Class members to incur significant expense to repair and replace elements of their structures.

93.     Plaintiff, individually and on behalf of all others similarly situated, demands judgment against IKO for compensatory damages and statutory penalties as to himself and all Class members, for the establishment of a common fund, plus applicable attorney fees, interest, and costs.

## COUNT IV:  UNJUST ENRICHMENT
### against all Defendants

94.     Plaintiff incorporates by reference each allegation contained in the preceding paragraphs of this Complaint.

95.     When Plaintiff and Class members purchased the Shingles, they conferred substantial benefits to IKO, which knowingly and willingly accepted and appreciated those benefits.

96.     IKO knew or should have known that, when Plaintiff and Class members paid for the Shingles, they expected that the Shingles would perform as represented and warranted but would not actually meet those standards.  Under these circumstances, IKO unjustly benefits from retaining the substantial benefits it received from Plaintiff and Class members.

97.     Plaintiff, individually and on behalf of all others similarly situated, demands judgment against IKO for restitution for himself and all Class members, for the establishment of a common fund, plus applicable attorney fees, interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and requests entry of judgment against IKO as follows:

A.      An order certifying the Class, designating Plaintiff as a representative of the Class, and designating the undersigned counsel as Class counsel.

B.      A declaration that IKO is financially responsible for notifying Class members of problems with the Shingles.

C.      An order enjoining IKO from deceptive advertising, marketing, distribution, and sales practices relating to the Shingles and further requiring IKO to repair and replace the Shingles on Plaintiff's and Class members' roofs with a suitable alternative roofing material of their choosing.

D.      An award of compensatory, exemplary, punitive, and/or statutory damages, including interest as applicable, in an amount to be proven at trial or in other appropriate proceedings.

E.      A declaration that IKO must disgorge all profits it received from the sale of the Shingles and make restitution to Plaintiff and Class members.

F.      An award of attorney fees and costs to the extent allowed by law.

G.      An award of prejudgment and postjudgment interest to the extent allowed by law.

H.      Leave to amend this Complaint to conform to the evidence produced at trial.

I.      Such other or further relief as may be appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands trial by jury of any and all issues in this action subject to trial by jury.


Dated:  May 31, 2016.                          Respectfully submitted,

                                               /s/ Charles J. LaDuca
                                               Charles J. LaDuca
                                               Brendan S. Thompson
                                               CUNEO GILBERT & LADUCA, LLP
                                               8120 Woodmont Avenue, Suite 810
                                               Bethesda, MD 20814
                                               (202) 789-3960
                                               (202) 789-1813 (fax)


                                               Robert K. Shelquist
                                               Scott Moriarity
                                               LOCKRIDGE GRINDAL NAUEN PLLP
                                               100 Washington Avenue South, Suite 2200
                                               Minneapolis, MN  55401
                                               (612) 339-6900


                                               **ATTORNEYS FOR PLAINTIFF**

23